## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **ADA CARNES,** Individually and as Personal Representative of the Estate of **ARTHUR L. CARNES,** Deceased, **CRAIG CARNES, DANIEL CARNES,** and **GLENN CARNES.** ) ) ) ) ) | |
| Plaintiffs, ) ) | C.A. No. _____ |
| vs. ) ) ) | **JURY TRIAL DEMANDED** |
| **CRANE CO.** (*sued individually and as successor-in-interest to* ADEL PRECISION PRODUCTS CORP.), a Delaware Corporation with its principal place of business in the State of Connecticut; ) ) ) ) ) ) | |
| **GENERAL DYNAMICS CORPORATION,** a Delaware Corporation with its principal place of business in the State of Virginia; ) ) ) | |
| **IMO INDUSTRIES, INC.** (*sued individually and as successor-in-interest to* DELAVAL STEAM TURBINE COMPANY, ENTERPRISE ENGINE & FOUNDRY COMPANY, and ADEL PRECISION PRODUCTS CORP.), a Delaware Corporation with its principal place of business in the State of New Jersey; ) ) ) ) ) ) ) ) ) | |
| **PARKER-HANNIFIN CORPORATION** (*sued individually and as successor-in-interest to* SACOMA-SIERRA, INC.), an Ohio Corporation with its principal place of business in the State of Ohio; and ) ) ) ) ) | |
| **THE BOEING COMPANY**, a Delaware Corporation with its principal place of business in the State of Illinois. ) ) ) ) | |
| Defendants. ) ) | |

## <u>PLAINTIFFS' ORIGINAL COMPLAINT</u>

1.      Plaintiff, Ada Carnes is Arthur L. Carnes' widow and is the Personal

Representative of the Estate of Arthur Carnes.


2.      Plaintiffs Craig Carnes, Daniel Carnes, and Glenn Carnes are the adult children of

Arthur and Ada Carnes.

3.      At all relevant times, each respective Defendant was the agent, servant, employee, and/or joint-venturer of its co-Defendants. Each of the defendants acted in the full course and scope of such relationship at all such times. At all relevant times, Plaintiffs allege that the following defendants were individuals, corporations, partnerships and/or unincorporated associations (1) organized and existed under the laws of the State of Delaware, some other state or foreign jurisdiction; (2) each of them were and are still authorized to and are doing business in the State of Delaware, the laws of some other state, or foreign jurisdiction; and/or (3) have regularly conducted business in the State of Delaware: **CRANE CO.** (*sued individually and as successor-in-interest to* ADEL PRECISION PRODUCTS CORP.), a Delaware Corporation with its principal place of business in the State of Connecticut; **General Dynamics Corporation**, a Delaware Corporation with its principal place of business in the State of Virginia; **IMO Industries, Inc.** (*sued individually and as successor-in-interest to* DELAVAL STEAM TURBINE COMPANY, ENTERPRISE ENGINE & FOUNDRY COMPANY, and ADEL PRECISION PRODUCTS CORP.), a Delaware Corporation with its principal place of business in the State of New Jersey; **Parker-Hannifin Corporation** (*sued individually and as successor-in-interest to* SACOMA-SIERRA, INC.), an Ohio Corporation with its principal place of business in the State of Ohio; **THE BOEING COMPANY**, a Delaware Corporation with its principal place of business in the State of Illinois..

## JURISDICTION AND VENUE

4.      Under 28 U.S.C. § 1333, this Court has jurisdiction over this because Plaintiffs' injuries bear a significant relationship with traditional maritime activities.

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

6.    (a)    This Court has jurisdiction over this case because there is citizenship diversity, and the matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000.00). The Defendants are either (1) Delaware corporations and/or are subject to jurisdiction in Delaware because of their (2) respective contacts with the State of Delaware and/or (3) respective conduct of substantial and/or systematic business in Delaware. Specifically, at all relevant times, foreign corporation-Defendants and/or their predecessors manufactured, processed, produced, supplied, provided, distributed, disturbed, and/or utilized substantial amounts of asbestos and asbestos-containing materials that were sold, distributed and used in Delaware.

(b)    Schedule A attached hereto identifies (1) the asbestos exposed individual, ARTHUR CARNES, and (2) at least one doctor who diagnosed the Decedent with an asbestos-related disease.

## FIRST CAUSE OF ACTION
### (Strict Liability)

### DEFENDANTS AND/OR THEIR "ALTERNATE ENTITIES" ARE LIABLE TO PLAINITFFS FOR STRICT PRODUCT LIABILITY BECAUSE:

7.    At all relevant times each respective Defendant was (1) the successor and/or successor-in-business/interest; (2) successor of a product or product line; (3) parent; (4) subsidiary; (5) owned by; or (6) owner of; or (7) member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain mineral substance generically known as asbestos as well as asbestos-containing products.. For brevity's sake, Plaintiffs collectively refer to these entities as the "**alternate entities**." Each respective Defendant is liable to the Plaintiffs for its respective alternate entities' tortious conduct. The Defendants are responsible for the alternate entities' acts because Plaintiffs' remedies against each alternate entity has been virtually destroyed. However,

3

the Defendants have acquired the assets, products, product lines, of each such alternate entity. Defendants have destroyed the Plaintiffs' remedy against each alternate entity. Each Defendant has assumed the risk-spreading role of each alternate entity.  Finally, each Defendant enjoys the alternate entity's goodwill. Each respective Defendants alternate entities are as follows:

| DEFENDANT | ALTERNATE ENTITY |
| --- | --- |
| CRANE CO. | CRANE ENVIRONMENTAL<br>CRANE PUMPS AND SYSTEMS<br>VALVE SERVICES<br>CRANE VALVE GROUP<br>CRANE SUPPLY<br>CHAPMAN VALVE CO.<br>DEMING PUMPS<br>JENKINS VALVES<br>COCHRANE, INC.<br>COCHRANE FEED TANKS<br>COCHRANE CORPORATION<br>STOCKHAM VALVES & FITTINGS, INC. |
| IMO INDUSTRIES, INC. | DELAVAL STEAM TURBINE<br> COMPANY<br>WARREN PUMPS, INC.<br>COLFAX CORPORATION<br>IMO PUMP<br>IMO AB<br>ALLWEILER HOUTTUIN<br>SIEMENS AG (as successor-in-interest to<br>DEMAG DELAVAL TURBOMACHINERY<br>CORP.)<br>COLFAX PUMP GROUP<br>COLFAX CORPORATION<br>ADEL PRECISION PRODUCTS CORP |
| PARKER-HANNIFIN CORPORATION | PARKER-HANNIFIN CORPORATION<br>PARKER HANNIFIN (EIS DIVISION)<br>PARKER APPLIANCE CORPORATION<br>HANNIFIN CORPORATION<br>SACOMA-SIERRA, INC. |
| THE BOEING COMPANY | MCDONNELL AIRCRAFT CO.<br>MCDONNELL DOUGLAS TRAINING<br>SYSTEMS INC.<br>BOEING DEFENSE & SPACE GROUP<br>MCDONNELL DOUGLAS HELICOPTER<br>CO.<br>THE BOEING CO. |

BOEING
DOUGLAS AIRCRAFT CO.
MCDONNELL DOUGLAS CORP.
MCDONNELL DOUGLAS ELECTRONIC
SYSTEMS CO.
BOEING INTEGRATED DEFENSE
SYSTEMS (IDS)
DOUGLAS AIRCRAFT COMPANY, INC.
MCDONNELL DOUGLAS
CORPORATION
DE HAVILLAND AIRCRAFT OF
CANADA LTD.
DE HAVILLAND AIRCRAFT COMPANY

8.      Defendants, as well as their respective alternate entities knew and intended that their asbestos and asbestos-containing products be used by the purchaser or user without inspection for defects or in any of their component parts and without knowledge of the hazards involved in such use.

9.      Defendants' asbestos and asbestos-containing products were defective and unsafe for their intended purpose because breathing asbestos fibers causes serious disease and/or death. The defect existed in said the asbestos and asbestos-containing products at the time they left the Defendants' possession and caused personal injuries, including asbestosis, other lung damage, cancer, and mesothelioma to users, consumers, workers, bystanders, and others, including Mr. Carnes while being used in a reasonably foreseeable manner. Therefore, the Defendants' asbestos and asbestos-containing products were defective, unsafe, and dangerous for use.

10.      At all relevant times, the Defendants' asbestos and asbestos-containing products failed to perform as safely as an ordinary consumer and/or other "exposed persons" would expect when used in an intended or reasonably foreseeable manner. Moreover, the asbestos and/or asbestos-containing products' inherent dangers outweighed their benefits.

11.      At all relevant times, the asbestos and asbestos-containing products' foreseeable use involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, or other "exposed persons" but was known or knowable to Defendants. The Defendants, however failed to adequately warn of this substantial danger.

12.     Mr. Carnes was not aware of the substantial danger of using Defendants' products, and these dangers were not readily recognizable by him. These Defendants and their alternate entities failed to adequately warn of the risks to which ARTHUR L. CARNES, and others similarly situated, were exposed.

13.     Defendants and their "alternate entities" knew or should have known of the inherent dangers of their asbestos and asbestos-containing products. Nonetheless these defendants intended that such asbestos-containing products and/or equipment would be used or handled. When the Defendants' asbestos products was used and/or handled, it released airborne asbestos fibers. The foreseeable use and handling of the Defendants' asbestos-containing products and equipment exposed ARTHUR L. CARNES (and others) to these asbestos fibers.

14.     ARTHUR L. CARNES used, handled, or was otherwise exposed to the Defendants' asbestos and asbestos-containing products and equipment in a reasonably foreseeable manner. ARTHUR L. CARNES' exposure to asbestos and asbestos-containing products occurred at various locations described in Exhibit "A."

15.     As a direct and proximate result Defendants and their respective alternate entities' conduct, ARTHUR L. CARNES' asbestos exposure to asbestos and asbestos-containing products caused severe and permanent injury to the Plaintiffs; the nature of which, along with the date of Decedent ARTHUR L. CARNES' diagnosis and the date he learned such injuries were attributable to exposure to asbestos and/or asbestos-containing products, are set forth in Exhibit "B." Exhibit B is attached to and incorporated into this Complaint.

16.     Plaintiffs allege that progressive lung disease, cancer, and other serious diseases are caused by inhaling asbestos fibers without perceptible trauma. The resulting disease occurs over a period of time.

17.     On or about June 22, 2018, ARTHUR L. CARNES suffered and died from malignant mesothelioma. Mr. Carnes' mesothelioma was caused by his exposure to asbestos and asbestos-containing products and equipment. At the time of Mr. Carnes' exposure to asbestos and asbestos-containing products and equipment, he was unaware that asbestos or asbestos-

containing products presented any risk of injury and/or disease.

18.     As a direct and proximate result of the Defendants' conduct referenced above, Decedent ARTHUR L. CARNES suffered permanent injuries to his person, including, but not limited to, mesothelioma, other lung damage, and cancer, from the effect of exposure to asbestos fibers, all to the Plaintiffs' general damage in a sum in excess of the jurisdictional limit.

19.     As a direct and proximate result of the Defendants' conduct referenced above, Plaintiffs incurred: liability for physicians, surgeons, nurses, hospital care, medicine, hospice, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time.

20.     As a direct and proximate result of the Defendants' conduct referenced above, Plaintiffs have and will continue to be: deprived of the support, society, solace, care, comfort, companionship, affection, advice, service and guidance of a husband and father in ARTHUR L. CARNES. Plaintiffs have and will also incur: pecuniary losses, including loss of income, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses; the full nature and extent of which are not yet known. Plaintiffs have also suffered mental anguish.

21.     In researching, manufacturing, fabricating, designing, modifying, testing, or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos-containing products and equipment, Defendants and their "alternate entities" did so with conscious disregard for the safety of anyone, including Arthur Carnes, who came in contact with their asbestos and asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer. The Defendants obtained this knowledge, in part, from scientific studies performed by, at the request of, or with the assistance of, such Defendants, their "alternate entities", on or before 1930, and thereafter.

22.     On or before 1930, and thereafter, the Defendants and their "alternate entities"

were aware that the general public and other persons, including Arthur Carnes, who would/were likely to come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury. The Defendants and their "alternate entities" also knew that the general public and other persons, including Mr. Carnes, who came in contact with asbestos and asbestos-containing products, would assume, and in-fact did assume, that exposure to asbestos and asbestos-containing products was safe; such exposure was actually extremely hazardous to health and human life.

23.     With this knowledge, the Defendants and their "alternate entities" opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, re-brand, manufacture for others, package, and advertise said asbestos and asbestos-containing products without attempting to protect users, bystanders, or any other people, including but not limited to, Arthur Carnes, from, or warn of the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect such people from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, Defendants and their "alternate entities" intentionally failed to reveal their knowledge of said risk, failed to warn of said risk and consciously and actively concealed and suppressed said knowledge from such people and the general public, thus impliedly representing to such people and the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, and their "alternate entities" engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

24.     The Defendants and their "alternate entities", engaged in the conduct described in this Complaint motivated by their financial interest. The Defendants and their "alternate entities" engaged in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, re-branding,

manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. Because of this financial motivation, Defendants and their "alternate entities" consciously disregarded the safety of users, bystanders, or any other people, including but not limited to, Arthur Carnes, and were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to such people and induced such people to work with and be exposed thereto.

25.     Defendants, their "alternate entities", their officers, directors, and managing agents participated in, authorized, ratified, and had full knowledge of, or should have known of, each of the acts set forth in this Complaint.

26.     Defendants and their alternate entities are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities." Each of Defendants' officers, directors, and managing agents participated in, authorized, ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth in this Complaint.

27.     The Defendants' conduct described in this Complaint was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of users, bystanders, or any other people, including but not limited to, Arthur Carnes. Plaintiffs, seek punitive damages for acts, which include but are not limited to: Defendants and their "alternate entities", impliedly warranted their asbestos and asbestos-containing products and equipment to be safe for their intended use, but their asbestos and asbestos-containing products created an unreasonable risk of bodily harm to Decedent ARTHUR L. CARNES.

28.     Decedent, ARTHUR L. CARNES' injuries and death are a result of cumulative exposure to asbestos and various asbestos-containing products and equipment manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, brought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised by the aforementioned Defendants and their "alternate entities," and each of them constituted a substantial contributing factor to Decedent's development of the

asbestos disease complained of herein. Among the injurious exposures alleged herein are Decedent ARTHUR L. CARNES' exposures to asbestos supplied with, affixed and/or added to, and/or installed on the equipment identified aboard U.S. Naval vessels and U.S. Air Force aircraft.

29.     Decedent ARTHUR L. CARNES relied upon Defendants and "alternate entities," and each of their representations, lack of adequate warnings, and implied warranties of the fitness of asbestos and asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Decedent was injured permanently as alleged herein.

30.     As a direct and proximate result of the actions and conduct outlined herein, Decedent ARTHUR L. CARNES suffered the injuries and damages alleged herein.

Plaintiffs request judgment against all of Defendants to the fullest extent of the law and as described in this Complaint.

## SECOND CAUSE OF ACTION
### (Negligence)

**DEFENDANTS AND/OR THEIR "ALTERNATE ENTITIES" ARE ALSO LIABLE TO PLAINITFFS FOR NEGLIGENCE BECAUSE:**

31.     All of Plaintiffs' allegations in the First Cause of action are incorporated into this Section of Plaintiffs' Complaint.

32.     At all times herein mentioned, Defendants and "alternate entities" negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised a certain substance commonly known as "asbestos" and other asbestos-containing products and equipment. The Defendants' asbestos and asbestos-containing products proximately caused personal injuries to Arthur Carnes, while being used in a manner that was

reasonably foreseeable, thereby rendering the Defendants' asbestos and asbestos-containing products unsafe and dangerous for use by users, bystanders, and other people, including but not limited to Arthur Carnes.

33. Defendants and their "alternate entities" had a non-delegable duty to exercise due care while conducting their business as described above. Each Defendant breached their duty to exercise such due care.

34. Defendants and their "alternate entities" intended, knew or should have known that their asbestos and asbestos-containing products would be transported by truck, rail, ship and other common carriers, and that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to: sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling users, bystanders, and other people, including but not limited to Arthur Carnes, would use and/or be in proximity of and exposed to such asbestos fibers.

35. As a direct and proximate result of the actions and conduct outlined herein, Plaintiffs have suffered the injuries and damages alleged herein.

### THIRD CAUSE OF ACTION
**(False Representation Under Restatement of Torts Section 402-B)**

**DEFENDANTS AND/OR THEIR "ALTERNATE ENTITIES" ARE ALSO LIABLE TO PLAINITFFS FOR THEIR FALSE REPRESENTATIONS:**

36. All of Plaintiffs' allegations made above are incorporated into this section of Plaintiffs' Complaint.

37. At all relevant times when Defendants and their "alternate entities" researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,

inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised said the asbestos and asbestos-containing products described above they also represented to the general public including but not limited to, Decedent ARTHUR L. CARNES and his employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

38.    The purchasers and users of Defendants' asbestos and asbestos-containing products, including but not limited to, Decedent ARTHUR L. CARNES, and his employers, relied upon the Defendants' representations of in the selecting, purchasing, and using asbestos and asbestos-containing products.

39.    The Defendants' representations and those of their alternate entities were false and untrue. The Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products and equipment were not safe for their intended use, nor were they of merchantable quality as represented by Defendants in that asbestos and asbestos-containing products and equipment have incredibly dangerous properties and defects whereby said products cause asbestosis, other lung damages, and cancer, and have other defects that cause injury and damage to the users and bystanders of such products, including but not limited to Arthur Carnes, thereby threatening the health and life of such persons.

40.    As a direct and proximate result of said false representations by Defendants and their "alternate entities," Arthur Carnes sustained the injuries and damages alleged herein.

**COUNT FOUR**
**(WRONGFUL DEATH)**

**DEFENDANTS AND/OR THEIR "ALTERNATE ENTITIES" ARE ALSO**
**LIABLE TO PLAINITFFS FOR WRONGFUL DEATH BECAUSE:**

41.    All allegations above are incorporated herein.

42.    As a result of developing Mesothelioma, Arthur Carnes suffered and sustained very serious injuries and died as a result.

43.     Plaintiffs allege that because of Defendants' conduct Arthur Carnes' injuries and illnesses were permanent in nature and that he was forced to suffer until his death; that his life enjoyment was impaired, and that his expected life span was shortened.

44.     Decedent ARTHUR L. CARNES died in Collin County, Texas. Plaintiff Ada Carnes qualified as Personal Representative of the Estate of Arthur L. Carnes.

45.     As a result of the Defendants' conduct the Decedent and all Plaintiffs are entitled to recover compensatory and punitive damages from the Defendants. Mrs. Carnes and all of Mr. Carnes' heirs have also lost Mr. Carnes' services, protection, care, support, guidance, assistance, and love and have suffered mental anguish.

Plaintiffs respectfully request that that the Defendants be cited to appear and answer herein as the law commands. Furthermore, upon final hearing hereof, Plaintiffs request judgment from the Defendants jointly and severally, for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) for general, compensatory and special damages; plus a sum well in excess of Seventy-Five Thousand Dollars ($75,000.00) for punitive damages; for medical expenses in an amount to be shown upon the trial hereof; together with costs and disbursements herein, and pre and post judgment interest on said judgment from the date of filing until paid as by law provided, for costs of this action and such other and further relief as to which they may be entitled.

46.     The Defendants' conduct described above was a direct, proximate and producing cause of the damages resulting from asbestos-related lung disease of Decedent, and of the following general and special damages including:

(a)     Damages to punish Defendant for proximately causing Decedent's untimely death;

(b)     For the past, present, and future pain and suffering, mental and emotional anguish, and anxiety sustained by Plaintiffs and Decedent;

(c)     The physical impairment suffered by Decedent;

(d)     The disfigurement suffered by Decedent;

(e)     Reasonable and necessary medical and related expenses according to proof

incurred by Decedent;

(f)     Decedent's lost earnings and net accumulations;

(g)     Reasonable funeral and burial expenses incurred by Decedent's estate;

(h)     Decedent's mental anguish caused by the anticipation of pain, death, and forever leaving his beloved family;

(i)     Past and future loss of the companionship and society, care, advice, counsel and consortium, which Plaintiffs would have received from the Decedent prior to his illness and death caused by his exposure to asbestos;

(j)     The past and future mental anguish suffered by Decedent's heirs as a consequence of observing the last illness and death of the Decedent;

(k)     The past and future pecuniary loss and loss of inheritance suffered by Decedent's heirs as a consequence of the death of Decedent;

(l)     Plaintiffs seek punitive and exemplary damages; and

(m)     Any and all recoverable survival and wrongful death damages on behalf of all statutory beneficiaries of the Decedent.

(n)     For Plaintiffs' general damages according to proof;

(o)     For damages for fraud according to proof.

(p)     For Plaintiffs' cost of suit herein;

(q)     For pre- and post-judgment interest; and

(r)     For such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand trial by jury as to all issues so triable.

Dated: January 23, 2019

Of Counsel:

Christopher L. Johnson
Erin M. Wood
WATERS & KRAUS LLP
3141 Hood Street, Suite 700
Dallas, TX 75219
214-357-6244 Telephone
214-357-7252 Facsimile
cjohnson@waterskraus.com
ewood@waterskraus.com

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan ( Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

/s/ *Ian Connor Bifferato*
Ian Connor Bifferato (Bar No. 3273)
The Bifferato Firm P.A.
1007 North Orange Street, 4th Floor
Wilmington, DE 19801
Telephone: (302) 225-7600
Fax: (302) 254-5383
cbifferato@tbf.legal

**Attorneys for Plaintiffs**

EXHIBIT "A"

Plaintiff ARTHUR L. CARNES' exposure to asbestos and asbestos-containing products occurred at various locations within the United States including, but not limited to:

| Location of Exposure | Job Title | Exposure Dates |
|---|---|---|
| 1. United States Navy<br><br>USS Dixie<br>San Diego, California | Boiler Tender | 1951-1955 |
| 2. United States Air Force<br><br>Various Locations: including but not limited to, Plattsburg AFB, Carswell AFB, Little Rock AFB, Thailand, Wurtsmith AFB | Air craft maintenance, air craft mechanic, assistant crew chief, and crew chief | 1955-1977 |

EXHIBIT "B"

Plaintiff ARTHUR L. CARNES's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the Plaintiff including, but not limited to, breathing difficulties, asbestosis, mesothelioma, lung and/or other cancer, and/or other lung damage. Plaintiff ARTHUR L. CARNES was diagnosed with malignant mesothelioma on or about December 14, 2017.

Plaintiff ARTHUR L. CARNES was retired at the time he was diagnosed with malignant mesothelioma.