# IN THE UNITED STATES DISTRUCT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADA CARNES, Individually and as Personal Representative of the Estate of ARTHUR L. CARNES, Deceased, CRAIG CARNES, DANIEL CARNES, and GLENN CARNES,<br><br>    Plaintiffs,<br><br>    v.<br><br>CRANE CO., *et al.*,<br><br>    Defendants. | No. 1:19-cv-00128-MN-SRF |

## OPENING BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANT GENERAL DYNAMICS CORPORATION

Dated: June 24, 2020

**GORDON REES SCULLY MANSUKHANI, LLP**
Michael C. Heyden, Jr., Esq. (#5616)
Erik C. DiMarco, Esq. (Admitted *Pro Hac Vice*)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
(302) 992-8954
Attorneys for Defendant
General Dynamics Corporation

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS............................. 1

SUMMARY OF ARGUMENT ................................................................................................... 1

PRELIMINARY STATEMENT ................................................................................................. 3

STATEMENT OF FACTS .......................................................................................................... 4

STANDARD OF REVIEW ......................................................................................................... 6

ARGUMENT AND AUTHORITIES .......................................................................................... 7

   A. Plaintiffs' Burden Under Texas Substantive Law ................................................................ 7

   B. No Evidence of Asbestos Exposure At Carswell AFB and/or AFP No. 4 ............................ 8

CONCLUSION............................................................................................................................ 9

# TABLE OF AUTHORITIES

### Cases
*Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) .............................................. 6
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ..................................................... 6
*Celotex Corp.*, 477 U.S. at 322. ......................................................................................................... 6
*Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex.1989) ........................................................ 7, 9
*Leonard, et al. v. CBS Corporation, et al.*, Case No. 2:12-60177-ER Order (E.D. Pa. Jan. 28, 2014) ........ 7
*Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 585, 585 (1986) .................................. 6
*Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 379 (3d Cir. 1990) ............................................................. 7
*Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170-171 (5th Cir. 1991) ...................................................... 7

### Other Authorities
Fed. R. Civ. P. 56(a) ........................................................................................................................ 6
Fed. R. Civ. P. 56(c)(1)(A) .............................................................................................................. 6

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Ada Carnes filed this action in the United States District Court for the District of Delaware on January 23, 2019 as Personal Representative of the Estate of Arthur Carnes (hereinafter "Mr. Carnes" or "Decedent") naming several entities as defendants in an alleged asbestos-related personal injury suit. D.I.1, attached as **Exhibit A**. General Dynamics ("General Dynamics") filed its Answer on February 25, 2019. D.I.11, attached as **Exhibit B.** On March 1, 2019, Plaintiffs filed an Amended Complaint to assert amended allegations against co-defendant, The Boeing Company. D.I.14, attached as **Exhibit C**.

Mr. Carnes was deposed on March 7th and 8th of 2018, in a prior proceeding in the District Court of Dallas County, Texas (hereinafter the "Texas proceeding").[1] On or about April 18, 2019, Plaintiffs served Rule 26 Initial Disclosures, a copy of which is attached (without exhibits) as **Exhibit D**. General Dynamics served its Rule 26 Initial Disclosures on April 19, 2019, a copy of which is attached hereto as **Exhibit E**. The parties submitted a Joint Stipulation on April 13, 2020, agreeing that Texas' substantive law shall be applied in this case. D.I. 73, attached as **Exhibit F**.

General Dynamics submits the following Motion for Summary Judgment on product identification and nexus pursuant to paragraph 12 of this Court's Scheduling Order entered on April 4, 2019. D.I. 25, attached as **Exhibit G**[2] and as amended on April 24, 2020. D.I. 78, attached as **Exhibit J**.

## SUMMARY OF ARGUMENT

1.  Defendant General Dynamics moves for summary judgment on the basis that there is no

---

[1] *Arthur L. Carnes v. Air & Liquid Systems Corporation, et al.*, Case No. DC-18-02026.
[2] The instant Motion is limited to product identification and nexus in accordance with para. 12 of the Scheduling Order. General Dynamics preserves all defenses, including but not limited to, all remaining elements of causation, derivative sovereign immunity and government contractor. Should the instant motion be denied, General Dynamics reserves the right to file a motion for summary judgment following conclusion of expert discovery in accordance with para. 4(d)(iii) of the Scheduling Order. **Exhibit G**, D.I.25.

evidence decedent Arthur Carnes was exposed to asbestos either while serving as a Government Inspector at Air Force Plant No. 4 located adjacent to Carswell Air Force Base or from a product manufactured or supplied by General Dynamics while Arthur Carnes served on Carswell Air Force Base. Both Government-owned facilities are located in Ft. Worth, Texas.

2.     Mr. Carnes began his career in the military in 1951 when he served in the Navy on the U.S.S. Dixie. During his service on the U.S.S. Dixie, Mr. Carnes worked on boilers, pumps, and valves. He testified that his work required him to come in contact with asbestos insulation. Mr. Carnes was honorably discharged from the U.S. Navy in 1955. Thereafter, Mr. Carnes joined the Air Force on September 29, 1955. His service in the Air Force required him to conduct thorough inspections of various fighter and bomber aircraft to ensure that they complied with the U.S. Government's specifications. One such aircraft was the B-58, which Mr. Carnes encountered at as a crew member—and later a crew chief—beginning in 1961 at Carswell Air Force Base, and also as a Government Inspector at Air Force Plant Number 4. Air Force Plant No. 4 is a federal enclave and military premise owned by the U.S. Government and, until 1993, operated by General Dynamics as a government contractor. At all relevant times, the U.S Government maintained full control of and access to the facility in question. During this time, General Dynamics assembled, and subsequently modified, B-58 aircraft at Air Force Plant No. 4. Mr. Carnes testified that as a Government Inspector he was responsible for inspecting B-58 aircrafts after the modifications were completed to ensure that they adhere to Government specifications. He testified that he only worked at Air Force Plant No. 4 for nine to twelve months.

3.     Despite his familiarity with asbestos from his time in the Navy, as well as his comprehensive knowledge of the internals and externals of the B-58s, Mr. Carnes testified that he had no knowledge of encountering any asbestos components with his work on the B-58s as a crew

member at Carswell Air Force Base or as a Government Inspector at Air Force Plant No. 4. Further, Mr. Carnes was never told, nor did he have any independent knowledge, that asbestos was even present at either Carswell Air Force Base or Air Force Plant No. 4. There is no direct or circumstantial evidence produced in this action to show otherwise.

4.      There is no evidence that Mr. Carnes worked with or around asbestos during his work on B-58 aircraft at Carswell Air Force Base or his work as a Government Inspector of B-58 aircraft at Air Force Plant No. 4. Accordingly, there is no evidence of any exposure to asbestos to support any claim against General Dynamics in this matter.

## **PRELIMINARY STATEMENT**

Plaintiffs commenced this action seeking damages for personal injuries sustained by decedent, Arthur Carnes, from his alleged exposure to asbestos. Plaintiffs' Complaint, and Amended Complaint, do not provide any specific allegations against General Dynamics. Rather, Plaintiffs' theory of liability against this defendant is based on Mr. Carnes' service as a B-58 crew member at Carswell Air Force Base and as a Government Inspector at Air Force Plant No. 4.

Air Force Plant No. 4 is a federal enclave and military premise owned by the U.S. Government and operated by General Dynamics as a government contractor. At all relevant times, the U.S Government maintained full control of and access to the facility in question. During this time, General Dynamics assembled, and subsequently modified, B-58 aircraft at Air Force Plant No. 4. Mr. Carnes testified that although he did not do any hands on work at Air Force Plant No. 4, he would do a thorough inspection on the B-58s and sign off on the Government checklist or forms to ensure compliance with Government specifications.

Notably, Mr. Carnes testified that he had no knowledge that any component part of the B-58 that he worked on at Carswell Air Force Base and/or Air Force Plant No. 4 contained asbestos. This is remarkable given that prior to his service at the Carswell Air force Base, Mr. Carnes served

as a boiler tender in the U.S. Navy where he specifically testified that he worked with and around asbestos-containing parts on boilers, pumps and valves. In other words, prior to his service at Carswell, Mr. Carnes was familiar with asbestos and asbestos-containing components. Moreover, as a Government Inspector of the B-58 he had a comprehensive understanding of the aircraft to enable him to conduct thorough inspections of same and ensure compliance with government specifications. Thus, had he encountered any asbestos component on the B-58s at Carswell Air Force Base and/or at Air Force Plant No. 4, Mr. Carnes would know and be able to testify as such. However, he did not. Mr. Carnes further testified that he never heard that asbestos was even present at Carswell Air Force Base or Air Force Plant No. 4. There is no evidence that Mr. Carnes was exposed to asbestos as a result of his service at Carswell Air Force Base and/or Air Force Plant No. 4 and, thus, General Dynamics is entitled to summary judgment.

## STATEMENT OF FACTS

Mr. Carnes began his career in the U.S. military by serving as a boiler tender in the Navy from July 30, 1951 to June 6, 1955. Deposition of Arthur Carnes ("Carnes Dep."), *Arthur Carnes v. Air & Liquid Systems Corporation, et al.*, Case No. DC-18-02026, attached as **Exhibit H**; at 15:23 to 16:4. During his time in the Navy, Mr. Carnes served on the U.S.S. Dixie. As a boiler tender, he would directly work with boilers, pumps, and valves. Mr. Carnes testified that this work caused him to come in contact with asbestos-containing insulation and gaskets. He testified that the boilers had six-to-eight inches of asbestos insulation. *Id.* at 105:1-24. He also recalled mixing a 50-pound sack of asbestos insulation to be used on the equipment on the U.S.S. Dixie. *Id.* at 111:15-21. Mr. Carnes testified that this work created dust which he would breathe. *Id.* at 171:10-14. He even testified that he had friends aboard the U.S.S. Dixie who contracted mesothelioma. *Id.* at 87. All of this alleged asbestos exposure pre-dates his station at Carswell Air Force Base and his employment at Air Force Plant No. 4.

After being discharged from the Navy, Mr. Carnes joined the Air Force on September 29, 1955. *Id.* at 30:24-25. He served as an Air Force mechanic at the Plattsburgh Air Force Base in Plattsburgh, New York from December 1955 to February 1961. *Id.* at 31:11-25.  After leaving Plattsburgh in 1961, Mr. Carnes was stationed at Carswell Air Force Base in Fort Worth, Texas until 1964. At Carswell, he was ranked a staff sergeant and assigned to the 43rd Bombing Wing of the Strategic Aircraft Command. *Id.* at 53:1-7. His duty at Carswell Air Force Base was to inspect B-58 aircraft. *Id.* at 184-185. The B-58s were supersonic bombers designed to carry nuclear weapons. *Id.* at 173:3-12.  The B-58s were designed by the U.S. Government and built according to Government specifications. *Id.* at 184:20-24.

During his second year at Carswell Air Force Base, Mr. Carnes testified to working a brief stint of nine-to-twelve months at Air Force Plant No. 4, which was the Convair Facility located adjacent to Carswell Air Force Base. *Id.* at 189:17:22. Air Force Plant No. 4 is a federal enclave and military premise owned by the U.S. Government and operated by General Dynamics as a government contractor.  See **Exhibit E**, GD's Rule 26 Disclosures. At all relevant times, the U.S Government maintained full control of and access to the facility in question. *Id.*  During this time, General Dynamics assembled, and subsequently modified, B-58 aircraft at Air Force Plant No. 4. Mr. Carnes testified that although he did not do any hands-on work at Air Force Plant No. 4, he would do a thorough inspection on the B-58s and sign off on the Government forms to ensure compliance with Government specifications. *Id.* at 184-185.

Notably, Mr. Carnes testified that he had no knowledge whether any component part of the B-58 that he worked on at either Carswell Air Force Base or Air Force Plant No. 4 contained asbestos. *Id.* at 194:3-6.  He further testified that he never heard that asbestos was even present at either location.  *Id.* at 193-194. In 1964, Mr. Carnes was transferred from Carswell Air Force Base

to Little Rock Air Force Base, where he was stationed until 1967. *Id.* at 62-63. There has been no other fact witness deposed in this case. Mr. Carnes died on June 22, 2018 from mesothelioma.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 585, 585 (1986). If the moving party sufficiently demonstrates the absence of a genuine issue of material fact, the nonmovant must then set forth specific facts establishing a genuine issue for trial. *Id.* at 587. If the nonmovant fails to show a genuine issue as to an essential element to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-325 (1986).

To defeat a motion for summary judgment, it is insufficient for the nonmovant to "simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. United States Postal Service*, 409 F.3d 584, 595 (3d Cir. 2005). A genuinely disputed fact must be supported by citing to "particular parts of materials in the record, including depositions and documents, electronically stored information, affidavits or declarations." Fed. R. Civ. P. 56(c)(1)(A). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis omitted); *see also Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). Rule 57(c) "mandates entry of summary judgment, after adequate time for discovery and upon a motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

6

Pursuant to stipulation between Plaintiffs and General Dynamics, dated April 13, 2020 (see **Exhibit F**), Texas substantive law shall govern in this case. General Dynamics is entitled to summary judgment as the evidence in this case establishes that the decedent was not exposed to asbestos from working with, or around, any equipment manufactured by General Dynamics or any facilities operated by same, which is an essential element of Plaintiffs' case against this Defendant.

## ARGUMENT AND AUTHORITIES

### A. Plaintiffs' Burden Under Texas Substantive Law

"A fundamental principle of [Texas] traditional products liability law is that the plaintiff must prove that the defendants supplied the product which caused the injury." *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex.1989). Under Texas law, plaintiffs must prove, through direct or circumstantial evidence, that asbestos fibers from defendants' products were an actual, producing cause of plaintiffs' injury. *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 170-171 (5th Cir. 1991) (stating that no evidence a product contained asbestos). Thus, the plaintiff must prove that, more probable than not, a defendant provided a product that contained asbestos to which Plaintiff was exposed. *Id*.

Texas law makes clear that a motion for summary judgment cannot be defeated merely by allegations that the defendant's product was present somewhere on the worksite. *Id.* This logic is applied in most jurisdictions, including this one. *See Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 379 (3d Cir. 1990) (finding that in an asbestos-related personal injury case, the plaintiff must prove, *inter alia*, that he was exposed to a particular manufacturer's or supplier's asbestos-containing product at the worksite and the mere fact that the defendant's product was present at the worksite is insufficient to create a triable issue of fact to defeat summary judgment); *see also Leonard, et al. v. CBS Corporation, et al.*, Case No. 2:12-60177-ER Order (E.D. Pa. Jan. 28, 2014) (granting summary judgement to General Dynamics as there was no evidence that the plaintiff was

7

exposed to asbestos insulation on the ships at issues, despite fact witness testimony suggesting the use of thermal insulation aboard all ships) (attached as **Exhibit I**).

**B. No Evidence of Asbestos Exposure At Carswell AFB and/or AFP No. 4**

Neither of Plaintiffs' Complaints nor the testimony from any witness deposed in this matter provides any specific allegations against General Dynamics. Rather, Plaintiffs' apparent sole theory of liability against General Dynamics is that Mr. Carnes was exposed to asbestos while working on or near the B-58 during his time at Carswell Air Force Base, including the 9-12 month period of time he served as a Government Inspector at Air Force Plant No. 4, which is adjacent to Carswell Air Force Base. As noted above, Air Force Plant No. 4 is a federal enclave and military premise owned by the U.S. Government and operated by General Dynamics as a government contractor. *See* **Exhibit E**, GD's Rule 26 Disclosures. At all relevant times, the U.S Government maintained full control of and access to the facility in question. *Id.* During this time, General Dynamics assembled, and subsequently modified, B-58 aircraft at Air Force Plant No. 4. Mr. Carnes testified that he was responsible for inspecting B-58 aircrafts after the modifications were completed to ensure that they adhered to government specifications. *See* **Exhibit H**, Carnes Dep. at 184-85. He testified that he only worked Air Force Plant No. 4 for nine to twelve months.

Even though Mr. Carnes was fully aware of what asbestos was and testified to encountering it during his prior service in the Navy on the U.S.S. Dixie, Mr. Carnes made clear that he had no knowledge of ever encountering asbestos either as a B-58 crew member or Government Inspector of the B-58s. *Id.* at 105:1-24. This is notable because his work as a Government Inspector to ensure compliance with government specifications required him to have a thorough understanding of the various components on the B-58, including asbestos. *Id.* at 184-185. Mr. Carnes denied any such knowledge. *Id.* at 194:3-6 In fact, he made clear that he had never heard of any asbestos being

8

present at Carswell Air Force Base or Air Force Plant No. 4. *Id*. at 193-194.

As such, there is no evidence that Mr. Carnes encountered asbestos during his service at Carswell Air Force Base or during his duty as a Government Inspector at Air Force Plant No. 4. Moreover, no co-worker has testified in this case and no documentary evidence has been produced to establish circumstantial evidence whereby it can be reasonably inferred that Mr. Carnes was likely exposed to asbestos at Air Force Plant No. 4, or from his work with B-58s at Carswell Air Force Base. Moreover, under Texas law there is no evidence that General Dynamics supplied an asbestos-containing product to which Mr. Carnes was exposed from his work as a B-58 crew member at Carswell Air Force Base or as a Government Inspector at Air Force Plant N. 4. *See Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex.1989) (stating that "A fundamental principle of traditional products liability law is that the plaintiff must prove that the defendants supplied the product which caused the injury").

## CONCLUSION

There is no evidence that General Dynamics provided any asbestos product to which Mr. Carnes was exposed as either a crew member of a B-58 bomber at Carswell Air Force Base or as a Government Inspector at Air Force Plant No. 4 that supports any claim against General Dynamics Corporation in this matter. Therefore, summary judgment should be granted.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI, LLP**

By: _/s/ Michael C. Heyden, Jr._
Michael C. Heyden, Jr., Esq. (#5616)
Erik C. DiMarco, Esq. (Admitted *Pro Hac Vice*)
1000 N. West Street, Suite 1200
Wilmington, DE 19801
(302) 992-8954
Attorneys for Defendant
General Dynamics Corporation

Dated: June 24, 2020

9