IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADA CARNES, Individually and as Personal Representative of the Estate of ARTHUR L. CARNES, Deceased, et al.,<br><br>　　　　　　Plaintiffs,<br>　v.<br><br>CRANE CO., et *al*.,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)　No. 1:19-cv-00128-MN-SRF<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT
ON BEHALF OF GENERAL DYNAMIC CORPORATION**

　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　THE BIFFERATO FIRM, P.A.

Of Counsel:

　　　　　　　　　　　　　　　　　　*/s/ Ian Connor Bifferato*
Christopher L. Johnson *(admitted pro hac vice)*　　Ian Connor Bifferato (Bar No. 3273)
WATERS & KRAUS, LLP　　　　　　　　1007 North Orange Street, 4th Floor
3151 Hood Street, Suite 700　　　　　　　Wilmington, DE 19801
Dallas, TX 75219　　　　　　　　　　　Telephone: (302) 225-7600
Telephone: (214) 357-6244　　　　　　　cbifferato@tbf.legal
Facsimile: (214) 357-7252
cjohnson@waterskraus.com　　　　　　　FARNAN LLP

　　　　　　　　　　　　　　　　　　*/s/ Brian E. Farnan*
　　　　　　　　　　　　　　　　　　Brian E. Farnan (Bar No. 4089)
　　　　　　　　　　　　　　　　　　Michael J. Farnan (Bar No. 5165)
　　　　　　　　　　　　　　　　　　919 N. Market St., 12th Floor
　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　Telephone: (302) 777-0300
　　　　　　　　　　　　　　　　　　Fax: (302) 777-0301
　　　　　　　　　　　　　　　　　　bfarnan@farnanlaw.com
　　　　　　　　　　　　　　　　　　mfarnan@farnanlaw.com

　　　　　　　　　　　　　　　　　　Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.   NATURE AND STAGE OF PROCEEDINGS ........................................................................ 1

II.  SUMMARY OF ARGUMENT ............................................................................................. 2

III. STATEMENT OF FACTS .................................................................................................... 2

IV.  ARGUMENT ........................................................................................................................ 5

   A. Summary judgment is inappropriate where a genuine issue of material fact exists. ........... 5

   B. There is ample evidence to create a material issue of fact that Mr. Carnes was exposed to asbestos through his work on and around B-58s. ...................................................................... 6

     1. It is undisputed that Mr. Carnes worked directly on and around B-58s .......................... 6

     2. There is evidence that Mr. Carnes' work directly exposed him to asbestos and more than doubled his risk of developing malignant mesothelioma. .............................................. 7

V.   CONCLUSION ..................................................................................................................... 7

# **TABLE OF AUTHORITIES**

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) ............................................................. 5
*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986) .................................................................... 5
*Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989) ............................................................ 5
*Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) ................................................................ 5
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) ...................... 5
*Slaughter v. So. Talc Co.*, 949 F.2d 167, 170-71 (5th Cir. 1991) ..................................................... 5

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................................................... 4

I.   NATURE AND STAGE OF PROCEEDINGS

On February 12, 2018, Arthur L. Carnes and Ada Carnes filed this products liability matter in Dallas County (Texas state) District Court. **Exhibit A**, Plaintiffs' Original Petition and Jury Demand; **Exhibit B**, Affidavit of Christopher L. Johnson. The parties deposed Mr. Carnes over the course of two days on March 7-8, 2018.[1]

On March 12, 2018, another defendant, The Boeing Company filed a Notice of Removal removing the state matter to the United States District Court for the Southern District of Texas (Houston Division). **Exhibit C**, Defendant, The Boeing Company's, Notice of Removal. On June 22, 2018, Mr. Carnes died of cardiopulmonary arrest due to malignant mesothelioma of the left lung. **Exhibit D**, State of Texas Certification of Vital Record of Arthur Lorenzo Carnes ("Death Cert."). On August 8, 2018, Plaintiffs filed a Stipulation of Dismissal Without Prejudice as to all defendants.[2] Judge Vanessa D. Gilmore entered the Order Granting Stipulation of Dismissal without Prejudice on August 10, 2018. **Exhibit E**, Order Granting Stipulation of Dismissal without Prejudice.

On January 23, 2019, Plaintiff, Ada Carnes, filed this wrongful death civil action against several Defendants, including General Dynamics to recover damages for injuries arising from Mr. Carnes' exposure to asbestos. D.I.1, Plaintiffs' Original Complaint (attached as **Defendant's Exhibit A**). On March 1, 2019, Plaintiff filed a First Amended Complaint amending certain allegations against Boeing. *See* D.I.14, Plaintiff's First Amended Complaint, attached as **Defendant's Exhibit B**.

---

[1] For the Court's convenience, excerpted portions of both deposition transcripts are attached hereto as separate exhibits.

On April 13, 2020, the parties stipulated that *inter alia* Texas substantive law applies in this matter. **Exhibit F**, D.I.73, Joint Stipulation Regarding Choice of Law and Scope of Defendant General Dynamics' Dispositive Motion. Defendant filed its Motion for Summary Judgment on June 24, 2020. D.I. 81 and 82, Motion for Summary Judgment on Behalf of General Dynamics Corporation.

## II. SUMMARY OF ARGUMENT

Despite Defendant's arguments, Plaintiffs in-fact have evidence that proves that decedent, Arthur Carnes ("Mr. Carnes") was exposed to asbestos through Defendant's products at Defendant's premises. It is undisputed that Mr. Carnes, while in the U.S. Air Force, worked on and around B-58s for several years. Defendant also does not dispute that the B-58 is its aircraft. Moreover, Mr. Carnes testified that he and others in his immediate vicinity performed extensive work on B-58s. At minimum, B-58 clamps and insulation contained asbestos. Mr. Carnes' work on B-58s exposed him to asbestos in an amount sufficient to increase his risk of developing mesothelioma. Accordingly, the Court should deny Defendant's Motion.

## III. STATEMENT OF FACTS

Mr. Carnes served in the United States Air Force from approximately the mid-1950s through 1977. *Compare* Exhibit 2 to Exhibit G[3], Social Security Administration, Itemized Statement of Earnings for Arthur Carnes ("Carnes ISE") at p. 1/5 (identifies Mr. Carnes' time in the USAF as spanning from 1957, through 1977); *with* Exhibit 3 to Exhibit G, Oral and Videotaped Deposition of Arthur Carnes, dated March 7, 2018, ("Vol. 1") at 30:17-31:4 (Mr. Carnes testified that he entered the USAF in September 1955); *see also* **Exhibit G**, Affidavit of Jerome E. Spear,

---

[3] Plaintiffs' expert, Jerome Spear attached certain documents as exhibits to his affidavit, which is attached as "Exhibit G." Rather than including duplicative exhibits with inconsistent labels, Plaintiffs cite to such exhibits by reference to Mr. Spear's exhibit number.

CIH, CSP, FAIHA ("Spear Aff."). From approximately 1961, through 1964, Mr. Carnes was stationed at Carswell Air Force Base ("Carswell") in Fort Worth, Texas. Exhibit 3 to Exhibit G, Vol. 1 at 52:23-53:05.

Here, Mr. Carnes worked on B-58s, which were supersonic nuclear-capable bomber aircraft. *Id.* at 53:10-17, Exhibit 4 to Exhibit G, Oral and Video Taped Deposition of Arthur Carnes, dated March 8, 2018, ("Vol. 2") at 173:3-12. It is undisputed that General Dynamics assembled and modified B-58s at Carswell. *See generally* Defendant's Opening Brief in Support of Motion for Summary Judgment on Behalf of Defendant General Dynamics Corporation ("Defendant's Brief") at p. 2.

At Carswell, Mr. Carnes served for approximately six months as an assistant crew chief before becoming a crew chief. Exhibit 4 to Exhibit G, Vol. 2 at 191:04-07; Exhibit 3 to Exhibit G, Vol. 1 at 53:12-20. As crew chief, Mr. Carnes was "hands-on" and responsible for everything that went on and everyone working on the B-58. Exhibit 3 to Exhibit G, Vol. 1 at 54:12-20; Exhibit 4 to Exhibit G, Vol. 2 at 178:9-12. While the Air Force assigned Mr. Carnes to one such B-58, he worked on multiple. Exhibit 3 to Exhibit G, Vol. 1 at 54:1-11.

Notably, Mr. Carnes recalled there being a building at Carswell called, "Convair" near where B-58s were parked. *Id.* at 150:15-151:1. Mr. Carnes inspected B-58s in the Convair building. *Id*. at 150:20-151:14, 152:09-17, 152:22-153:2, 153:07-08. Convair Aerospace Division was part of the General Dynamics Corporation. **Exhibit H**, Part I – General Instructions Section A (identifying Convair as a General Dynamics Division); *see also* **Exhibit I**, Inter-Office Correspondence, dated June 9, 1967, at p. 5 (GD-CARNES-000585) (identifying Convair as operator of a facility at Carswell in Fort Worth, Texas).

During Mr. Carnes' tenure working on B-58s, he replaced hundreds of B-58 clamps. Exhibit 4 to Exhibit G, Vol. 2 at 192:10-193:13. Mr. Carnes identified these clamps as "Adel." *Id.* at 57:24-58:03. In particular, Mr. Carnes recalled that they contained a small part number and said, "Adel." Exhibit 4 to Exhibit G, Vol. 2 at 306:6-307:4. Former Defendant, IMO Industries, Inc. has admitted that it manufactured clamps, which correspond to Mr. Carnes' descriptions, that contained chrysotile asbestos. Exhibit 5 to Exhibit G, IMO Industries, Inc.'s Objections and Responses to Plaintiffs' First Set of Interrogatories, and Requests for Production of Documents ("IMO Disc. Responses") at p. 8, *et seq.* ("One such coating option was comprised of chrysotile asbestos encapsulated in a Teflon matrix."); Exhibit G, Spear Aff.

On B-58s, Mr. Carnes used insulated clamps only as opposed to ones made of plain metal. *Id.* at 202:2-22. These clamps were insulated with rubber or "heat resistance." Exhibit 3 to Exhibit G, Vol. 1 at 56:08-13. Approximately 70% of the clamps Mr. Carnes worked with contained heat insulation. Exhibit 4 to Exhibit G, Vol. 2 at 216:12-22. Mr. Carnes described the insulation as looking like a piece of rotten "gunny sack." Exhibit 3 to Exhibit G, Vol. 1 at 38:2-6. Mr. Carnes used sockets and ratchets to remove the clamps and spread them apart causing insulation to break off. Exhibit 3 to Exhibit G, Vol. 2 at 210-8-24. While working with these clamps, the insulation got on Mr. Carnes' hands and clothes. Exhibit 3 to Exhibit G, Vol. 1 at 57:16-23.

Mr. Carnes also performed maintenance on B-58 wings. Exhibit 3 to Exhibit G, Vol. 1 at 58:21-59:06. In particular, Mr. Carnes recalled pulling off B-58 wings' leading edge, if they had a hot air leak. *Id.* at 59:1-6. Hot air was piped into the wing through a three-inch pipe with preformed insulation laced to pipe sections. *Id.* at 60:6-18.

Plaintiffs' expert, Jerome Spear, CIH, CSP, FAIHA has over 25 years' experience in identifying asbestos-containing materials and has opined that Mr. Carnes' work on and around B-58s exposed him to asbestos. Exhibit G, Spear Aff.

## IV. ARGUMENT

### A. Summary judgment is inappropriate where a genuine issue of material fact exists.

Under Federal Rule of Civil Procedure 56, summary judgment is inappropriate if there is a genuine issue of material fact. Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." L*amont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). The movant must prove the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 322. If the movant does so, the burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *Anderson*, 477 U.S. at 247-49.

**B. There is ample evidence to create a material issue of fact that Mr. Carnes was exposed to asbestos through his work on and around B-58s.**

Under Texas products liability law, the plaintiff must prove that the defendants supplied the product that caused the injury. *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989). To establish product identification, a plaintiff need only prove that it was likely that the defendant provided a product that exposed the plaintiff to asbestos. *See Slaughter v. So. Talc Co.*, 949 F.2d 167, 170-71 (5th Cir. 1991). Here, there is ample evidence that General Dynamics supplied a product that exposed Mr. Carnes to asbestos.

    **1.    It is undisputed that Mr. Carnes worked directly on and around B-58s.**

There is no dispute that Mr. Carnes, while an assistant crew chief and crew chief worked on multiple B-58s in a "hands-on" capacity. Exhibit 3 to Exhibit G, Vol. 1 at 53:12-54:20; Exhibit 4 to Exhibit G, Vol. 2 at 178:9-12, 191:04-07. During Mr. Carnes' tenure working on B-58s, he replaced hundreds of heat-resistant, insulated B-58 clamps. Exhibit 3 to Exhibit G, Vol. 1 at 56:08-13; Exhibit 4 to Exhibit G, Vol. 2 at 192:10-193:13, 202:2-22. Mr. Carnes described the insulation as looking like a piece of rotten "gunny sack." Exhibit 3 to Exhibit G, Vol. 1 at 38:2-6. Mr. Carnes used sockets and ratchets to remove the clamps and spread them apart causing insulation to break off and get on his hands and clothes. Exhibit 3 to Exhibit G, Vol. 1 at 57:24-58:03; Exhibit 4 to Exhibit G, Vol. 2 at 210-8-24.

Mr. Carnes also performed maintenance on B-58 wings. Exhibit 3 to Exhibit G, Vol. 1 at 58:21-59:06. In particular, Mr. Carnes recalled pulling off B-58 wings' leading edge, if they had a hot air leak. *Id.* at 59:1-6. Hot air was piped into the wing through a three-inch pipe with preformed insulation laced to pipe sections. *Id.* at 60:6-18.

6

### 2. **There is evidence that Mr. Carnes' work directly exposed him to asbestos and more than doubled his risk of developing malignant mesothelioma.**

As described above, Plaintiffs have retained Jerome E. Spear, CIH, CSP, FAIHA. While Mr. Spear's expert report is forthcoming, he has authored an affidavit in this matter. Exhibit G, Spear Aff. Among other things, Mr. Spear has been trained to and has over 25 years of experience in identifying asbestos-containing products. *Id.* at ¶ 3. Mr. Spear has reviewed both deposition testimony and documentary evidence. *Id.* at ¶ 7. After doing so, Mr. Spears has opined that, " . . . Mr. Carnes was exposed to asbestos through his work on and/or in the immediate vicinity of work on at least the following B-58 equipment: clamps and insulation." *Id. at* ¶¶ 3, 7. Moreover, in Mr. Spears' forthcoming expert report, he intends to articulate how Mr. Carnes' exposure to B-58s, ". . . more than doubled his risk of developing malignant mesothelioma." *Id.* at FN 23.

### V. CONCLUSION

Defendant's Motion is limited to the issues of product identification and nexus. There is ample evidence creating a fact question that Defendant's product, the B-58, exposed Mr. Carnes to asbestos. Mr. Carnes worked with and around others working with asbestos-containing clamps and insulation on B-58s. Accordingly, Plaintiffs respectfully request that the Court deny Defendant's Motion for Summary Judgment in its entirety.

Dated: July 8, 2020

Of Counsel:

Christopher L. Johnson *(admitted pro hac vice)*
WATERS & KRAUS, LLP
3151 Hood Street, Suite 700
Dallas, TX 75219
Telephone: (214) 357-6244
Facsimile: (214) 357-7252
cjohnson@waterskraus.com

Respectfully submitted,

THE BIFFERATO FIRM, P.A.

*/s/ Ian Connor Bifferato*
Ian Connor Bifferato (Bar No. 3273)
1007 North Orange Street, 4th Floor
Wilmington, DE 19801
Telephone: (302) 225-7600
cbifferato@tbf.legal

FARNAN LLP

*/s/ Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Attorneys for Plaintiffs