**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION ) | |
| ) | |
| ADA CARNES, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 19-128-MN-SRF |
| ) | |
| CRANE CO., et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**I. INTRODUCTION**

Presently before the court in this asbestos-related personal injury action is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by General Dynamics Corporation ("General Dynamics"). (D.I. 81) For the reasons that follow, the court recommends GRANTING General Dynamics' motion for summary judgment.[1]

**II. BACKGROUND**

  **a. Procedural History**

Plaintiff's decedent, Arthur L. Carnes ("Mr. Carnes"), passed away on June 22, 2018, from malignant mesothelioma. (D.I. 14 at ¶ 17; D.I. 83, Ex. D) On January 23, 2019, plaintiff Ada Carnes, individually and in her capacity as personal representative of Mr. Carnes' estate, along with plaintiffs Craig Carnes, Daniel Carnes, and Glenn Carnes (collectively, "Plaintiffs") filed this action against multiple defendants, including General Dynamics, asserting strict

---

[1] The briefing for the pending motion for summary judgment is as follows: General Dynamics' opening brief (D.I. 82), Plaintiffs' answering brief (D.I. 83), and General Dynamics' reply brief (D.I. 84).

liability, negligence, false representation, and wrongful death claims arising from Mr. Carnes' alleged harmful exposure to asbestos.  (D.I. 1)  On March 1, 2019, Plaintiffs filed an amended complaint, which reasserted claims against General Dynamics and amended certain allegations against co-defendant The Boeing Company.  (D.I. 14)  On June 24, 2020, General Dynamics filed a motion for summary judgment.  (D.I. 81)

   b.  Facts

         i.  Mr. Carnes' Relevant Exposure History[2]

On September 29, 1955, Mr. Carnes enlisted in the United States Air Force, after having been honorably discharged from the United States Navy earlier that same year.  (D.I. 82-1 at 122:4–11, 124:24–25)  From December 1955 through February 1961, Mr. Carnes was stationed as a mechanic at Plattsburgh Air Force Base in Plattsburgh, New York.  (*Id.* at 125:11–24)  From 1961 through 1964, Mr. Carnes was stationed at Carswell Air Force Base ("Carswell") in Fort Worth, Texas.  (*Id.* at 146:23–147:5)  Throughout his time at Carswell, Mr. Carnes maintained the rank of staff sergeant and inspected B-58s, bomber aircraft capable of carrying nuclear ordinances.  (*Id.* at 147:6–17)  At Carswell, Mr. Carnes served for approximately six months as an assistant crew chief before becoming a crew chief.  (D.I. 83, Ex. G at Ex. 4 at 191:4–7)  The parties do not dispute that General Dynamics assembled and modified the B-58 aircraft at Carswell.  (D.I. 82 at 2; D.I. 83 at 3)  For nine to twelve months during his second year of service at Carswell, Mr. Carnes worked as a Government Inspector at Air Force Plant No. 4, a federal enclave and military premises that was owned by the United States and operated by General Dynamics.  (D.I. 82-1 at 67, 301:11–23, 303:25–305:20)  Mr. Carnes referred to this

---

[2] On March 7th and 8th of 2018, Mr. Carnes gave oral and videotaped depositions in a separate proceeding, *Arthur Carnes v. Air & Liquid Systems Corporation, et al.*, Case No. DC-18-02026. (D.I. 82-1 at 95–438; D.I. 83, Ex. G at Ex. 3–4)

2

area as the "Convair" building during his deposition. (D.I. 83, Ex. G at Ex. 3 at 150:15–151:25) Convair Aerospace Division was a part of General Dynamics. (*Id.*, Ex. H)

Mr. Carnes replaced hundreds of clamps on B-58s at Carswell. (D.I. 83, Ex. G at Ex. 4 at 192:10–193:13) Mr. Carnes testified that the clamps had a small part number and "Adel" written on them. (*Id.* at 306:6–307:4) Based upon information disclosed in interrogatory responses in this asbestos litigation, IMO Industries, Inc. "sold numerous types of Adel-branded metal clamps" with various coating options, including one option that used "chrysotile asbestos encapsulated in a Teflon matrix." (D.I. 83, Ex. G at Ex. 5 at 8) However, the clamps on the B-58s that Mr. Carnes identified at his depositions were insulated with either rubber or "heat resistance." (D.I. 83, Ex. 4 at 202:2–22, Ex. 3 at 56:8–18) Mr. Carnes testified that approximately 70% of the clamps he worked on had heat insulation on them that looked like a "piece of gunny sack that had rottened" and was "brittle." (D.I. 83, Ex. G at Ex. 3 at 36:2–6; D.I. 82-1 at 336:12–22) Removing a clamp from a B-58 engine took about three minutes. (D.I. 82-1 at 151:2–5) Mr. Carnes used sockets and ratchets to spread the clamps apart to remove them, which caused insulation to break off and remain on his hands and clothes. (*Id.* at 161:6–23; 328:24–329:17)

Mr. Carnes also performed maintenance work on the wings of B-58s. (*Id.* at 152:21–153:6) Mr. Carnes testified that, if a B-58 had a hot air leak, he would pull off the leading edge of the aircraft's wing, which took about thirty minutes. (*Id.* at 153:1–155:17) Hot air was piped into the wing through a three-inch diameter pipe that was insulated with what looked like "preformed insulation type of metal," a "heavy tin foil." (*Id.* at 154:6–18)

3

While stationed at Carswell, Mr. Carnes never heard about asbestos. (*Id.* at 312:22–313:6) Nor did he have any knowledge about whether any component used on the B-58s at Carswell contained asbestos. (*Id.*)

### III. LEGAL STANDARD

#### a. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

4

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).  To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49 (emphasis in original).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322.  If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322-23.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it.  Fed. R. Civ. P. 56(e)(2)–(3).

### b. Texas Law – Product Identification/Nexus[3]

The parties do not dispute that Texas law applies to all substantive issues in this case. (D.I. 73)  Under Texas law, the plaintiff in an asbestos-exposure related products liability action "must prove that the defendants supplied the product which caused the injury." *Gaulding v. Celotex Corp.*, 772 S.W.2d 66, 68 (Tex. 1989).  "A plaintiff must prove that, more probably than not, he actually breathed asbestos fibers originating in defendants' products." *Slaughter v. S. Talc Co.*, 949 F.2d 167, 171 (5th Cir. 1991).

---

[3] Pursuant to the controlling scheduling order in this case, summary judgment motion practice has been bifurcated, and only product identification and nexus is currently at issue.  (D.I. 78)

## IV. DISCUSSION

Plaintiffs have produced no evidence that Mr. Carnes was exposed to an asbestos-containing product attributable to General Dynamics, nor have they produced any evidence that Mr. Carnes was exposed to asbestos at Carswell or at the Convair facility that General Dynamics operated. Mr. Carnes testified that he used "Adel" clamps in the course of replacing hundreds of B-58 claims. (D.I. 83, Ex. G at Ex. 4 at 192:10–193:13, 306:6–307:4) However, Plaintiffs fail to demonstrate that a material issue of fact exists concerning whether the clamps contained asbestos. To the contrary, the only evidence in the record regarding asbestos being present in Adel clamps relates to the years 1965 through 1993, after Mr. Carnes' service at Carswell had ended. (D.I. 83, Ex. G at Ex. 5 at 8) In addition, Mr. Carnes testified that he never heard about asbestos being present at Carswell or in the B-58s on which he worked. (82-1 at 312:22–313:6)

Plaintiffs rely on the affidavit of their expert, Jerome E. Spear ("Mr. Spear"), to create a factual issue as to whether Mr. Carnes was exposed to asbestos via his work on B-58s. (D.I. 83 at 7) Based on a review of deposition testimony and other documentary evidence in this case, Mr. Spear concludes that Mr. Carnes "was exposed to asbestos on Convair/General Dynamics B-58s . . . while serving first as a[] United States Air Force assistant crew chief and then crew chief between 1961, and 1964." (D.I. 83, Ex. G at ¶ 7) In particular, Mr. Spear cites Mr. Carnes' exposure to "clamps and insulation." (*Id.*) Mr. Spears' opinion with respect to Adel clamps is speculative because it is based only on the documents in the record which relate to clamps manufactured by IMO Industries, Inc. on a date after Mr. Carnes' undisputed term of service on B-58s from 1961 through 1964. (*Id.* at ¶ 11)

In addition, Mr. Spears' opinion relating to insulation exposure is based on documents produced by The Boeing Company related to the B-47, not the B-58 aircraft assembled and/or

6

modified by General Dynamics. (*Id.* at ¶ 13) Mr. Spears' opinion is speculative as to Mr. Carnes' exposure to asbestos because nothing in the record before the court nor any other evidence relied upon by Mr. Spears shows that any component on the B-58s that Mr. Carnes worked on contained asbestos. Plaintiffs may not rely on Mr. Spears' speculation to survive summary judgment. *See Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856–57 (9th Cir. 2019) ("A party's own speculation is insufficient to create a genuine issue of material fact, and a party cannot make it sufficient simply by finding an expert who is willing to assume its correctness."). Accordingly, viewing the record in the light most favorable to Plaintiffs, no reasonable juror could find that it is more probable than not that General Dynamics provided any asbestos containing products to which Mr. Carnes was exposed. Thus, the court recommends granting General Dynamics' motion for summary judgment. *See Gaulding*, 772 S.W.2d at 68; *Slaughter*, 949 F.2d at 170–71.

## V.     General Dynamics' Motion to Strike[4]

As an attachment to its reply brief on summary judgment, General Dynamics filed "Objections to and Request to Exclude" Mr. Spears' affidavit and the exhibits attached thereto based on their lack of relevance and Mr. Spears' lack of a foundation as an expert. (D.I. 84, Ex. 1) General Dynamics filed its request without complying with the Local Rules for filing a motion, including failing to demonstrate the certification required by D. Del. LR 7.1.1. (*Id.*) General Dynamics states that its requests "are not intended as a Daubert challenge." (*Id.* at 1 n.1) Nevertheless, General Dynamics states that its request is a "Motion to Strike," which has

---

[4] The briefing for the pending motion to strike is as follows: General Dynamics' "Objections to and Request to Exclude Plaintiffs' Summary Judgment Evidence" (D.I. 84, Ex. 1), Plaintiffs' "Response to Objections" (D.I. 85), and General Dynamics' Reply in Support of its Objections (D.I. 90).

the same intended consequence as a *Daubert* motion, *i.e.*, excluding an expert opinion. (*Id.* at 1–2)

Pursuant to the scheduling order in this case, "any application to the Court shall be by written motion filed with the Clerk," and "[a]ny non-dispositive motion should contain the statement required by Local Rule 7.1.1."[5] (*See* D.I. 25 at ¶¶ 12–13; D.I. 67; D.I. 78) "Unless otherwise ordered, all requests for relief shall be presented to the Court by motion." D. Del. LR 7.1.2(a). General Dynamics filed no such motion and, therefore, failed to comply with the local rules. *See Guardant Health, Inc. v. Found. Med., Inc.*, C.A. No. 17-1616-LPS-CJB, 2020 WL 2477522, at *2 n.3 (D. Del. Jan. 7, 2020) (not considering materials filed out of compliance with D. Del. LR 7.1.2 and ordering that such materials be stricken). Accordingly, the court will not consider General Dynamics' improperly filed motion to strike attached to its reply brief in support of its motion for summary judgment. (D.I. 84, Ex. 1; D.I. 85; D.I. 90)

## VI.    CONCLUSION

For the foregoing reasons, the court recommends GRANTING General Dynamics' motion for summary judgment. (D.I. 81)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right

---

[5] On April 27, 2020, the court so ordered the parties' stipulation to amend the scheduling order and to bifurcate case dispositive motions based solely on product identification and all other dispositive motions. (D.I. 78) However, the court's order does not permit the filing of a motion to strike attached as an exhibit to a reply brief in support of a motion for summary judgment.

to de novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: February 8, 2021

_____
Sherry R. Fallon
United States Magistrate Judge

9